UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| CONTINENTALAFA DISPENSING COMPANY,) | Case No. 08-45921-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| CONTINENTALAFA LIQUIDATION TRUST, ) | **Adversary No. 10-4213-659** |
| ) | |
| ) | PUBLISHED |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| HUMAN RESOURCE STAFFING, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Complaint to Avoid and Recover Preferential Transfers filed by ContinentalAFA Liquidation Trust, Defendant, Human Resource Staffing, LLC's Answer to Complaint to Avoid and Recover Preferential Transfers, Plaintiff's Motion for Summary Judgment, Plaintiff's Memorandum in Support of Summary Judgment, Defendant, Human Resource Staffing, LLC's, Reply to Plaintiff's Motion for Summary Judgment, Defendant, Human Resource Staffing, LLC's, Motion for Summary Judgment, Affidavit of Brian Green in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment, Defendant, Human Resource Staffing, LLC's, Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendant, Human Resource Staffing, LLC's Motion for Summary Judgment, Plaintiff's Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Defendant, Human Resource

Staffing, LLC's, Reply Brief in Support of Defendant's Motion for Summary Judgment. The matter was taken as submitted. Upon consideration of the record as a whole, the Court resolves the matter as follows.

## FINDINGS OF FACT

On August 7, 2008, ContinentalAFA Dispensing Company, *et al.* (hereinafter "Debtors") filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. On September 24, 2009, this Court confirmed the First Amended and Modified Chapter 11 Plan of Liquidation (hereinafter "Plan") proposed by the Official Committee of Unsecured Creditors. Pursuant to the Plan, certain rights and causes of action previously held by Debtors vested in the ContinentalAFA Liquidation Trust (hereinafter "Plaintiff").

Defendant Human Resource Staffing, LLC (hereinafter "Defendant") provides temporary workers to businesses. Brian Green (hereinafter "Green") is an officer and principal of Defendant who has been engaged in the business of providing temporary employee services for the past 12 years. Green Aff. ¶ 2; Def. Motion S. J. ¶ 9. On April 26, 2010, Plaintiff filed Complaint to Avoid and Recover Preferential Transfers in the amount of $103,856.28 (hereinafter collectively "Transfers"). The Transfers consist of payments made by Debtors to Defendant between May 8, 2008 and August 6, 2008, the 90-day period proceeding Debtors' bankruptcy filing (hereinafter "Preference Period").

Defendant has provided temporary employee services to Debtors since 2001. Defendant sent weekly invoices to Debtors for the temporary employee services furnished by Defendant. Def. Motion S. J. ¶ 13-14. To accommodate Debtors' invoicing needs, Defendant sent more than one invoice during the same week when Defendant provided services to different divisions of Debtors. Def. Motion S. J. ¶ 13; Green Aff. ¶¶ 6-7.

Debtors continued to use the temporary employees furnished by Defendant during the Preference Period. Pl. Motion S. J. ¶ 4. The payment history between Debtors and Defendant from

2

June 5, 2007 through May 7, 2008 (hereinafter "Pre-Preference Period") demonstrates that 90% of payments made by Debtors to Defendant were made within 30-60 days of invoicing. Def. Motion S. J. ¶ 15; Green Aff. Ex. A. The remaining 10% of the Pre-Preference Period payments were made in less than 30 days. Def. Motion S. J. ¶ 15; Green Aff. Ex. A. During the Preference Period, 100% of the Transfers were made between 30-60 days of invoicing. Def. Motion S. J. ¶ 15; Green Aff. Ex. A. Green states that it is customary in the temporary employee services industry for payments by medium to large companies to be made between 30 and 60 days after invoicing. Def. Motion S. J. ¶ 11; Green Aff. ¶ 3, 14. At times, Debtors paid multiple invoices on the same day by separate checks. Green Aff. Ex. A. The parties do not dispute the Pre-Preference Period or the Preference Period payment history.

The first invoice in the payment history above $20,000.00 was dated January 15, 2008, and was paid by Debtors on or about February 27, 2008. The majority of the invoices sent after January 15, 2008 were above $20,000.00. Prior to January 15, 2008, there were no invoices above $20,000.00; though the October 16, 2007 invoice was for $16,403.20, one of two October 30, 2007 invoices was for $18,042.06 and one of two November 20, 2007 invoices was for $18,900.86.

The May 20, 2008 invoice was the last invoice paid by Debtors; payment was received by Defendant on June 22, 2008. Defendant continued to provide Debtors with temporary employees through July 15, 2008, the date of the final invoice sent by Defendant to Debtors. Green Aff. ¶ 11. Of the $103,856.28 paid to Defendant during the Preference Period, $75,535.21 was paid directly to the temporary employees, $8,233.34 was paid for employment taxes and $5,287.46 was paid for worker's compensation. Def. Motion S. J. ¶ 16; Green Aff. ¶ 13. Only a small portion of the Transfers was retained by Defendant. Green Aff. ¶ 12.

Plaintiff argues that Plaintiff may recover the Transfers from Defendant pursuant to Section 550(a)(1) because Defendant is the initial transferee and the Transfers are preferential pursuant to Section 547(b). Plaintiff further argues that the Transfers were significantly higher than the Pre-

3

Preference Period payments and as such, the Transfers were not made in the ordinary course of business. Plaintiff concedes that Defendant provided uncompensated temporary employee services during the Preference Period and as such, the new value defense is available to Defendant. However, Plaintiff argues that Defendant is only entitled to retain $13,056.05, the amount equivalent to the new value provided after the last avoidable transfer. Alternatively, Plaintiff argues that only $17,305.01 constitutes new value, should this Court determine that the June 22, 2008 payments are unavoidable.

Defendant affirmatively defends that the Transfers were made in the ordinary course of business as is consistent with the business practice between Debtors and Defendant, as well as with the industry custom. In the alternative, Defendant argues that Defendant provided new value to Debtors after the last payment to Defendant was received. Defendant argues that the unpaid invoices sent to Debtors during the Preference Period total $54,700.62, and therefore, should Plaintiff prevail in avoiding the Transfers, Defendant is entitled to assert the new value defense in that amount.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2010) and Local Rule 81-9.01 of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(E) and (F) (2010). Venue is proper in this District under 28 U.S.C. § 1409(a) (2010).

## CONCLUSIONS OF LAW

The Court is presented with Cross-Motions for Summary Judgment. The Court must first decide whether the Transfers constitute preferential transfers which may be avoided and recovered by Plaintiff. If yes, the Court must determine whether the ordinary course of business defense, or in the alternative, the new value defense applies. The Court resolves the matter below.

Under Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265, 273 (1986). The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* at 323. Once the movant carries its burden, the burden shifts to the non-movant. *Id.* In ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan,* 864 F.2d 622, 624 (8th Cir. 1989)(citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

**I. Preferential Transfers pursuant to Section 547(b)**

Section 547(b) states that except as provided in Section 547(c), the trustee may avoid pre-petition transfers of an interest of the debtor in property if the transfers are:

(1) Transfers of an interest of the debtor in property
(2) Made to or for the benefit of a creditor
(3) Made for or on account of an antecedent debt
(4) Made while the debtor was insolvent
(5) Made within ninety days before the filing of the petition, and
(6) Transfers by which the creditor receives more than if the case were filed under Chapter 7, if the transfers had not been made, and if the creditor received payment to the extent provided by the provisions of Title 11.

See 11 U.S.C. § 547(b) (2010). A trustee may recover a transfer avoided pursuant to Section 547(b) from the original transferee. 11 U.S.C. § 550(a)(1) (2010).

The Transfers are preferential transfers within the meaning of Section 547(b). The Transfers were of an interest of Debtors in property, made to and for the benefit of Defendant, a creditor of Debtor. The Transfers were made on account of an antecedent debt, the debt owed to

Defendant by Debtors for the temporary employee services previously provided.  Section 547(f) states that "[f]or the purposes of [Section 547], the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."  11 U.S.C. § 547(f) (2010).  Therefore, the Transfers were made while Debtors were insolvent as the Transfers were made during the Preference Period.  "[U]nless creditors would receive a 100% payout, an unsecured creditor who received a payment during the preference period is in a position to receive more than it would have received in a chapter 7 liquidation."  *Betty's Homes, Inc. v. Cooper Homes, Inc. (In re Betty's Homes, Inc.),* 393 B.R. 671, 677 (Bankr. W.D. Ark. 2008).  Defendant is an unsecured creditor in this case, and all creditors will not receive a 100% payout.  As such, Defendant received more than it would have received in a hypothetical Chapter 7.  So too, there is no dispute that Defendant was the initial transferee within the meaning of Section 550(a)(1).

**II. Ordinary Course of Business Defense**

Section 547(b) however states that a trustee may avoid a preferential transfer except as provided by Section 547(c).  Section 547(c) states that

> The trustee may not avoid [a preferential transfer under Section 547(b)]
> …
> (2) to the extent such transfers was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (2010).  The ordinary course of business defense may apply through application of Section 547(c)(2)(A), the subjective inquiry, or Section 547(c)(2)(B), the objective inquiry.  Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Section 547(c) was written in the conjunctive, thus requiring Defendants to prove both the subjective and objective elements of the ordinary course of business defense. *See Peltz v. Merisel Americas, Inc & MOCA (In re Bridge Info. Sys., Inc.),* 383 B.R. 139, 149 (Bankr. E.D. Mo. 2008); *see also Concast*

6

*Canada, Inc. v. Laclede Steel Co., (In re Laclede Steel Co.),* 271 B.R. 127, 130 (B.A.P. 8th Cir. 2002). Defendant must prove application of the ordinary course of business defense by a preponderance of the evidence. 11 U.S.C. § 547(g) (2010); *Gateway Pacific Corp. v. Expeditors Int'l of Washington, Inc. (In re Gateway Pacific Corp.),* 153 F.3d 915, 917 (8th Cir. 1998); *Shodeen v. Airline Software, Inc. (In re Accessair, Inc.),* 314 B.R. 386, 392 (B.A.P. 8th Cir. 2004).

### A. Ordinary Course of Business under Section 547(c)(2)(A)

To determine whether the ordinary course of business defense applies, the court must engage in a "peculiarly factual analysis." *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir. 1991). The court must consider the "consistency of the transaction[s] in question as compared to other, prior transactions between the parties." *In re Laclede Steel Co.,* 271 B.R. at 131 (citing *Lovett,* 931 F.2d at 497). The court should consider the following factors in analyzing the transaction history between the parties:

> (1) the length of time the parties were engaged in the transactions at issue;
> (2) whether the amount or form of the tender differed from past practices;
> (3) whether the creditor of the debtor engaged in any unusual collection or payment activity; and
> (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*In re Laclede Steel Co.,* 271 B.R. at 131 n. 3. "[I]f *any one* of the factors is compellingly inconsistent with prior transactions, the payment is deemed to be outside the ordinary course of business between the parties." *Id.* at 131-32; *accord Cent. Hardware Co., Inc. v. The Walker-Williams Lumber Co. (In re Spirit Holding Co., Inc.),* 214 B.R. 891, 897 (E.D. Mo. 1997), *aff'd,* 153 F.3d 902 (8th Cir. 1998) (where the ordinary course of business defense did not apply because debtor changed the form of payment in a transfer during the preference period – debtor paid by wire transfer rather than by check). The ordinary course of business defense must be construed "narrowly, because it places one creditor on better footing than all other creditors." *Harrah's Tunica*

7

*Corp., d/b/a/ Harrah's Casino Cruises-Tunica v. Meeks (In re Armstrong),* 291 F.3d 517, 527 (8th Cir. 2002)(citation omitted).

Defendant argues that the ordinary course of business defense applies because the Transfers were consistent with the past practice between Debtors and Defendant in that 90% of payments during the Pre-Preference Period were paid between 30 and 60 days of invoicing – the remaining 10% was paid between 15 and 30 days of invoicing – while 100% of the Transfers during the Preference Period were paid between 30 and 60 days of invoicing. The parties do not dispute the payment history between Debtors and Defendant nor that the transactions represented in the payment history provide sufficient data to establish the ordinary course of business between Debtors and Defendant. The Court therefore concludes that the Pre-Preference Period is of sufficient duration and provides adequate information for this Court to determine whether the ordinary course of business defense may be established.

There is also no dispute that all payments made by Debtors to Defendant were by check, and at no point did Defendant's collection methods change during the Preference Period in relation to the Pre-Preference Period. Further, Defendant continued to furnish temporary employee services to Debtors, and Debtors continued to pay its invoices as it had in the past, up and until the last payment received by Defendant on June 22, 2008.

Plaintiff does not dispute the timing of the payments during the Preference Period in relation to the Pre-Preference Period. Rather, Plaintiff argues that the ordinary course of business defense does not apply because payments to Defendant increased sharply during the Preference Period. Specifically, Plaintiff argues that in instances of multiple invoices being paid by multiple checks on the same day, the total amount paid on those days was starkly higher than the average payment in past practices. As such, Plaintiff argues that these increased payments are not within the ordinary course of business between Debtors and Defendant.

8

Defendant argues that the payment history demonstrates many instances where multiple invoices were paid by Debtors by separate check on the same day and as such, this practice is not outside of the ordinary course of business between Debtors and Defendant.  Defendant argues that the invoices are based solely on the services provided to meet Debtors' need for temporary employees.  Therefore, Defendant argues that the increase in the amount of the invoices does not obliterate the ordinary course of business defense.

As indicated above, included in the second factor to be analyzed is whether the amount of the transfers differ from past practices.  Upon this Court's review of the undisputed payment history, it is clear that there were several instances of multiple invoices being paid by Debtors on the same day.  During the Pre-Preference Period, there were nineteen such examples of multiple invoices being paid on the same day.  In fact, there were only twelve instances during the Pre-Preference Period where only one invoice was paid on that day, though such solitary payments were often separated from other solitary payments by a few days, rarely more than a week. The payments were always made by check.  Each check was always in payment of a single invoice.  This Court therefore concludes that payment of multiple invoices on the same day was not outside the ordinary course of business between Debtors and Defendant.

Plaintiff also argues that the amount of the payments during the Preference Period increased starkly from the payments during the Pre-Preference Period especially when the payments of a single day are tallied, though paid by multiple checks.  The Court's review of the payment history compels a different stance on the identical facts.  While true that the amount of the payments made during the Preference Period did increase, this is part and parcel of Debtors' increased use of Defendant's services. Logically, Debtors' increased use of Defendant's services would yield higher invoices from Defendant.   The first invoice in the payment history above $20,000.00 was dated January 15, 2008, months before the Preference Period, and was paid by Debtors on or about February 27, 2008.  The majority of the invoices sent thereafter, until the last

9

invoice paid by Debtors, were above $20,000.00. Prior to January 15, 2008, there were no invoices above $20,000.00; though the October 16, 2007 invoice was for $16,403.20, one of two October 30, 2007 invoices was for $18,042.06 and one of two November 20, 2007 invoices was for $18,900.86.

Defendant furnished its services to Debtors based on Debtors needs. Were there no need for Defendant's increased services during that time, the invoices sent would not reflect a higher outstanding balance. So too, the payment history shows that where there was less need for Defendant's services, Defendant's invoices were considerably lower than average. The relevant past practice is therefore that the temporary employee services furnished by Defendant were commensurate with Debtors temporary employee needs, be they high or low. This practice of meeting Debtors' needs was evident during both the Pre-Preference Period and the Preference Period. Moreover, there is no allegation that Defendant took advantage of Debtors' deteriorating financial condition or that Defendant's collection practices changed at any point during Debtors' and Defendant's business relationship. Contrastingly, Plaintiff acknowledges that Defendant continued to provide temporary employee services long past the last received payment from Debtors. And, of the $103,856.28 in Transfers, $75,535.21 was paid directly to the temporary employees, $8,233.34 was paid for employment taxes and $5,287.46 was paid for worker's compensation.

Given the nature of the services provided by Defendant to Debtors, and the nature of the business relationship between Debtors and Defendant, this Court does not find the variation in the amount of invoices and thus variation in payment amounts to dispel the ordinary course of business defense. Greater emphasis on the dollar amount of the invoices than that which was afforded by this Court would be an erroneous application of the facts because that inquiry is particular to the business relationship between Debtors and Defendant in a particular week and does not speak to the course of Debtors' and Defendant's relationship generally. Defendant has demonstrated by

a preponderance of the evidence that the transfers are properly unavoidable by Plaintiff pursuant to Section 547(c)(2)(A).

### B. Ordinary Course of Business Defense under Section 547(c)(2)(B)

While the Court concludes that Defendant prevailed in the subjective inquiry under Section 547(c)(2)(A), the Court further acknowledges that Defendant's evidence as submitted was sufficient to meet its burden under the objective analysis of Section 547(c)(2)(B). As previously indicated, Section 547(c)(2)(B) centers on the whether the transfers during the preference period were ordinary in relation to industry custom. As such, the transferee would need to adduce evidence of the prevailing industry standards and demonstrate by a preponderance of the evidence that the transfers are within the scope.

Defendant argues that the ordinary course of business defense applies because the Transfers were consistent with the industry standard in that it is customary for invoices to be paid by medium and large companies in the temporary employee service industry between 30 and 60 days of invoicing. Further, Defendant argues that Green's affidavit is sufficient proof of the industry custom because Green's statements were based on his personal knowledge from being in the industry for over 12 years and his interaction with multiple companies during that time. As such, Defendant argues that Green's statements were made with requisite specificity on the issue.

Plaintiff argues that Defendant did not meet Defendant's burden of proof with respect to whether the practices between Debtors and Defendant are within the industry custom because the Green affidavit is the only evidence presented by Defendant to establish the industry custom. Plaintiff argues that the Green affidavit is insufficient as a matter of law because Green's statements do not rest on personal knowledge nor are his statements sufficiently specific.

The industry standard may be established by the testimony of an officer or employee of the transferee if that testimony establishes the range of the prevailing practices within the industry. *Peltz v. Hartford Life Ins. Co. (In re Bridge Info. Sys., Inc.),* 321 B.R. 247, 258 (Bankr. E.D. Mo.

11

2005) (citing *Jones v. United Sav. and Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.),* 9 F.3d 680, 685 (8th Cir. 1993)(where transferee's agent's testimony that late payment from distressed clients was the industry norm was sufficient to establish the industry norm pursuant to Section 547(c)(2))). Evidence of the industry standard presented by the transferee's employee must be based on first-hand knowledge in order for such evidence to be considered competent evidence. *In re Spirit Holding Co., Inc.,* 214 B.R. at 901-2; *see also In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.,* 9 F.3d at 684. In *Peltz v. Hartford Life Ins. Co.,* the transferee adduced affidavits of three of its employees who recited that the debtor's payment history was consistent with industry standards but failed to recite the industry standards based on personal knowledge. *Peltz,* 321 B.R. at 258. These affidavits were insufficient to establish the objective industry norm. *Id.*

Here, the only evidence adduced as to industry standard was the Green affidavit in which Green stated that he has been in the business of providing temporary employee services to a variety of companies for the past 12 years and that he has "discussed various aspects of the temporary employee services business with other individuals in the industry." Green Aff. ¶ 2. And, that based upon the information, knowledge and belief of Green, payments for services to temporary employee agencies are paid by medium to large companies between 30 and 60 days after invoicing. Green Aff. ¶ 3, 14. Plaintiff does not dispute the veracity of Green's statements but rather asserts that Green's statements are not based on personal knowledge and are not sufficiently specific. This Court disagrees. Green has affirmatively stated that it is the industry norm based on his 12 years of experience dealing with multiple companies, and that those multiple companies, of which he has personal knowledge, pay their temporary employee service invoices between 30 and 60 days after invoicing. Green's testimony is credible and his assertions are accepted for their veracity as the industry norm. Therefore, given the payment history between Debtors and Defendant, this Court concludes that the ordinary course of business defense would

12

properly be asserted pursuant to Section 547(c)(2)(B). A statement as to whether payment of multiple invoices by multiple checks on the same day is irrelevant to establishing the industry standard because that degree of specificity is best reserved for the particular accounting practice of each company rather than attributed to the industry norm.

Given the Court's conclusion that Defendant has established its ordinary course of business defense, the Court will not address the new value defense. An Order consistent with the above will be entered separately.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: May 9, 2011
St. Louis, Missouri
LBK

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Joel David Brett
Barklage, Brett, Wibbenmeyer & Hamill
211 North Third Street
St. Charles, MO 63011

Laura Uberti Hughes
Spencer Fane Britt & Browne LLP
One North Brentwood Blvd.
Ste. 1000
St. Louis, MO 63105

Thomas H. Riske
Lathrop & Gage, LLP
7701 Forsyth Blvd., Suite 400
Clayton, MO 63105

Human Resource Staffing
1456 Triad Center Dr.
St. Peters, MO 63376

Daniel D. Doyle
Lathrop & Gage LLP
7701 Forsyth Blvd., Ste. 400
St. Louis, MO 63105

Ryan C. Hardy
Spencer Fane Britt & Browne LLP
1 N. Brentwood Blvd., Tenth Floor
St. Louis, MO 63105